UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID LEHMANN,

    Plaintiff,                                   Case Number 11-10011
                                                 Honorable Thomas L. Ludington

v.

CITY OF BAY CITY,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DECLINING JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIM AND
CANCELING HEARING**

Plaintiff David Lehmann was hired as an employee of the City of Bay City on April 29, 1991. He worked as a "Meter Repair Worker" in the Water Distribution Department. He was a member of UWUA 542. In November 2001, Lehmann applied for and was selected to fill the position of "Lead Water Distribution Worker" in the Water Distribution Department. Lehmann became a Supervisor and member of UWUA Local 541. The "Lead Water Distribution Worker" position requires the employee to supervise a crew of laborers engaged in the installation, maintenance and repair of the Water Distribution Facilities and equipment. Maintaining a valid Michigan driver's license and Commercial Drivers License endorsement ("CDL") is a minimum qualification for the job. ECF No. 23 Ex. D.

On August 31, 2008, Lehmann was arrested and charged with Operating While Intoxicated, Possession of a Firearm While Intoxicated and Reckless Driving. On October 9, 2008, Lehmann pled guilty to Operating While Impaired and Careless Driving. As a result of these criminal convictions, Lehmann's CDL endorsement was suspended for one year.

On November 13, 2008, Lehmann was suspended from his position of employment with the

City of Bay City "until such time as [his] Commercial Driver's License privileges were restored." ECF No. 23 Ex. G. At the time of his suspension, Lehmann served as one of two "Crew Leaders" in the Water Distribution Department. The Managers of the Water Department and Local 541 agreed that the position could not remain vacant for the 12 months that Lehmann's CDL was suspended. The position was posted on January 8, 2009 and filled on February 10, 2009. Former UWUA Local 542 employee, Mike Brown, was selected to fill the position. Lehmann was not aware of who made the decision to fill his vacant position or who selected his replacement. He does not know the criteria employed in the replacement or selection process.

From January 26, 2009 through August 10, 2009, Bay City did provide Lehmann temporary employment in the Water Distribution Department. Lehmann worked as a "Water Meter Repair Worker II" and a "Customer Service Worker" earning $20 per hour. Lehmann filled these position for other employees who were on short term disability or sick leave. On August 10, 2009, the regular, full-time employees returned to their positions and Lehmann's status returned to "suspended."

On August 10, 2009, Lehmann's union, UWUA Local 541, filed a grievance on Lehmann's behalf. In the grievance, the union asserts that Lehmann was treated differently than another employee, Phil Helmrich, who also lost his CDL privileges but was not suspended from his employment. ECF No. 23 Ex. I. Union President, Kevin Rice, authored the grievance. Mr. Rice testified that at the time the grievance was filed, it appeared that Mr. Helmrich was treated more favorably than Lehmann. Mr. Helmrich filled a position vacated by a co-worker in the Electric Department who was placed on disability. There were, however, no positions open or available to Plaintiff in UWUA Local 541 or the Water Department. Bay City and Mr. Rice attempted, but was

unable, to place Mr. Lehmann in a UWUA 542 position as the Union President refused to waive the seniority requirements. Mr. Helmrich faced no similar contractual prohibition. Lehmann never suggested, and the union found no evidence, that age or retaliation played any role in the decision.

On October 28, 2009, the grievance was resolved through a negotiated "Letter of Agreement." ECF No. 23 Ex. K. The Agreement, in pertinent part, provides

> 1. On November 2, 2009, Lehmann will be granted the position of "Refuse Collection Worker."
>
> 2. Mr. Lehmann's seniority rights in Local 541 will be restored to his date of hire, May 7, 1991.
>
> 3. Mr. Lehmann will be subject to random drug and alcohol testing.
>
> 4. The existing grievance will be dropped.
>
> 5. The settlement is "with prejudice."

Lehmann agreed to the negotiated resolution and accepted the position of Refuse Collection Worker. The resolution allowed him to recapture his UWUA 542 seniority and eligibility for retirement health care benefits. Lehmann currently maintains the position of Refuse Collection Worker in the Sanitation Department for Bay City.

On May 6, 2010, Lehmann was involved in a significant property damage accident resulting in damage to a civilian vehicle while operating a sanitation vehicle. ECF No. 23 Ex. L. Pursuant to Bay City's "Progressive Discipline Policy" as set forth in the "Brown Book," Mr. Lehmann was cited for careless "Operation of Equipment," a Grade 2 violation, First Offense - punishable by written warning. ECF No. 23 Ex. M. On May 13, 2010, Mr. Lehmann received a "Written Warning." ECF No. 23 Ex. N.

On May 24, 2010, Lehmann was involved in a second property damage accident resulting in damage to a civilian vehicle while operating a sanitation vehicle. Pursuant to Bay City's Progressive Discipline Policy as set forth in the "Brown Book," Lehmann was cited for careless "Operating of Equipment," a Grade 2 violation, Second Offense - punishable by "Five Day suspension." ECF No. 23 Ex. M. On June 4, 2010, Lehmann received a five day suspension. ECF No. 23 Ex. O. On July 28, 2010, Lehmann was involved in a third property damage accident resulting in damage to a civilian vehicle while operating a sanitation vehicle. ECF No. 23 Ex. P. Pursuant to the Progressive Discipline Policy as set forth in the "Brown Book," Mr. Lehmann was cited for careless "Operating of Equipment," a Grade 2 violation, Third Offense - punishable by "Ten Day suspension." ECF No. 23 Ex. M. On August 10, 2010, Lehmann was suspended for ten days. ECF No. 23 Ex. Q.

On May 19, 2010 and August 31, 2010, Lehmann was involved in two additional property damage accidents while operating a sanitation vehicle. Both accidents involved damage to Bay City Equipment vehicles only. Lehmann received no discipline for the May 19, 2010 occurrence. The August 31, 2010 incident was investigated and characterized as a "Property Damage Accident," First Offense. Pursuant to Bay City's Progressive Discipline Policy, this is a Grade 2 violation, first offense punishable by Written Warning. Lehmann received a "Written Warning" for this offense. ECF No. 23 Ex. R.

Lehmann claims that he was inadequately trained on the sanitation vehicle he was required to operate and that despite making his supervisors aware of this, he was not permitted to operate a different model of sanitation vehicle. Lehmann also contends that other Sanitation Department employees were involved in property damage accidents and were not disciplined. Lehmann testified

that Steve Layman was involved in accidents in May or June and was not disciplined. He allegedly learned of the incident through another Sanitation Department employee who likewise was not involved in the investigation. Neither that employee nor Lehmann know who made the decision to impose discipline, what criteria were considered and what, if any, discipline occurred.

On April 5, 2010, Lehmann filed a Notice of Charge of Discrimination with the EEOC alleging that he was suspended and demoted after he lost his CDL privileges due to his age. ECF No. 23 Ex. S. On June 4, 2010, Lehmann was suspended for five days resulting from his May 24, 2010 sanitation vehicle accident. ECF No. 23 Ex. P. On August 10, 2010, Lehmann was suspended for ten days arising from his July 28, 2010 sanitation vehicle accident. ECF No. 23 Ex. O. Lehmann subsequently filed a second Notice of Charge of Discrimination with the EEOC alleging that his 5 and 10 day suspensions were, in fact, the retaliation for filing the April 5, 2010 EEOC Notice of Charge. ECF No. 23 Ex. S.

After filing the April 5, 2010 EEOC Charge, Lehmann was involved in two subsequent property damage accidents while operating a sanitation vehicle. Following each property damage accident, Lehmann was disciplined. The disciplinary decisions were made Lehmann's direct Supervisor, Kirk Hausbeck. Mr. Hausbeck consulted with his Supervisor, Tony Rytlewski, before issuing each discipline. Neither Mr. Hausbeck nor Mr. Rytlewski were aware that Lehmann filed an EEOC charge at the time the disciplinary decisions were made. ECF No. 23 Ex. T.

Plaintiff filed a complaint on January 1, 2011, alleging a claim for age discrimination in violation of Title VII of the Civil Rights Act of 1964 and Michigan's Elliot-Larsen Civil Rights Act and a claim for retaliation in violation of Title VII. ECF No. 1. Defendant subsequently filed a motion for summary judgment on Plaintiff's claims. ECF No. 23. For the reasons provided herein,

the Court will grant Defendant's motion for summary judgment on Plaintiff's federal claims and decline jurisdiction over Plaintiff's state law claim.

### I.   Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II. Discussion

As a preliminary matter, Plaintiff alleges that Defendant discriminated against him on the basis of his age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Title VII prohibits discrimination on the basis of "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII-protection does not extend to age discrimination. Neither party addresses this pleading deficiency, but instead proceed to evaluate Plaintiff's claims applying Title VII standards. Had Plaintiff pled an ADEA claim, the applicable legal standard would be based on a disparate treatment claim. The Court will thus address Plaintiff's claim pursuant to the authority applicable to an ADEA disparate treatment claim.

### A. Plaintiff's Disparate Treatment Age Discrimination Claim

Under the ADEA it is unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age, [or]

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

29 U.S.C. § 623(a)(2).

"To state a claim under a disparate treatment theory, a plaintiff must allege that 'age was a determining factor in the adverse action that the employer took against him or her.' " *McKnight v. Gates*, 282 F. App'x 394, 399 (6th Cir. 2008) (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023

(6th Cir. 1993)). The Sixth Circuit "has held that 'an employer may not use any . . . factors as a proxy for age, but age itself must be the motivating factor behind the employment action in order to constitute an ADEA violation.' " *Id.* (quoting *Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994)). Failure to sufficiently allege intent is fatal to an age discrimination case involving a claim of disparate treatment. *Gieger v. Tower Automotive*, 579 F.3d 614, 626 (6th Cir. 2009) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." (citations omitted)); *see also Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994); *Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993). To establish a claim under the ADEA, a plaintiff may either produce direct evidence of age discrimination, or rely upon circumstantial evidence that would permit an inference of discrimination under the burden-shifting method of *McConnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 510 (6th Cir. 2004).

### 1.   Direct Evidence

Defendant first argues that plaintiff has failed to offer direct evidence of age discrimination sufficient to withstand summary judgment under a disparate treatment theory. Direct evidence is that which, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Rodriguez v. FedEx Freight E., Inc.*, 487 F.3d 1001, 1007 (6th Cir. 2007) (citation and quotation omitted). "Direct evidence of discrimination does not require the factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice among members of the protected group." *Id.* "The ultimate question in every employment discrimination case involving a claim of disparate treatment

is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). A "plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *see also Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (holding same).

Plaintiff submits that City Manager Robert Belleman made a statement to his management team that the best time to terminate long tenured employees is before they vest for healthcare benefits. In *Kolessar v. City of Bay City*, Bay County Circuit Court (Docket No. 05-3673-CD), Linda Collier, former Chief of Police, testified regarding a conversation Mr. Belleman had with the members of his management team as follows:

> Well, I remember we were at some kind of a staff retreat or offsite and he said something to the effect that, if you're wondering rather to discipline or fire a long tenured employee, you should fire them when they don't get health benefits.

ECF No. 29 Ex. 16a at 5-6. Plaintiff argues that this statement, coupled with the fact that Plaintiff was approximately two years away from his benefits vesting provides direct evidence of discrimination.

As an initial matter, Belleman's statement offered through Linda Collier's statement provides two levels of hearsay. As a general rule, the court may not consider hearsay when deciding a summary judgment motion. *See, e.g.*, *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (" '[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.' " (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997))); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment.").

Although Belleman's statement may be excluded from the hearsay rule as a party admission, Plaintiff has not established that Collier's statement would be excluded from the hearsay rule. Defendant contends that Collier was no longer employed by the City at the time her statement was made in order for her statement to possibly be a party admission. Additionally, Plaintiff has not established her unavailability in order for her statement to be allowed pursuant to Federal Rule of Evidence 804(b)(1) nor does her statement qualify as non-hearsay pursuant to Federal Rule of Evidence 801(d)(1).

Moreover, "when examining 'statements allegedly showing employer bias' on the basis of age, courts should 'consider[ ] whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination.' " *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 395 (6th Cir. 2008) (quoting *Cooley v. Carmike Cinemas*, 25 F.3d 1325, 1330 (6th Cir. 1994)). The comment was allegedly made nearly four years before the events Plaintiff relies upon as the basis for his age discrimination claim. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (age-related comments made nearly a year before an adverse employment decision were too remote in time to have influenced that decision). This single comment attributed to Belleman was not related to the decision-making process regarding Plaintiff. Indeed, the fact that it was made nearly four years prior in time qualifies it as squarely within the category of "vague, ambiguous, or isolated remarks" that do not constitute direct evidence sufficient to withstand summary judgment. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir.2004) ("[S]tatements allegedly made by various members of ... management about the general need to lower the average

age of their workforce ... [do] not constitute direct evidence of age-based bias . . . "). Plaintiff has thus not met his burden of proof under a disparate treatment theory using direct evidence.

### 2. Circumstantial Evidence

Plaintiff can still maintain his action for age discrimination under a disparate treatment theory if he can point to circumstantial evidence sufficient to lead a reasonable factfinder to conclude that plaintiff was discriminated against on the basis of age. "Circumstantial evidence [of discrimination] . . . is proof that does not on its face establish discriminatory animus, but [that] does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). The Sixth Circuit uses the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze ADEA claims brought under a disparate treatment theory and based upon circumstantial evidence. *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009). To set forth a prima facie case of age discrimination under this framework, a plaintiff "must show that he or she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) suffered such action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364-65 (6th Cir.2007).

If the plaintiff establishes a prima facie case, "the defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007). If the defendant can come forth with such a reason, "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the

plaintiff remains at all times with the plaintiff.' " *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Defendant does not dispute that Plaintiff was a member of a protected class or that he suffered an adverse employment action. The Court thus considers only those prongs of the *McDonnell Douglas* test which Defendant argues Plaintiff cannot satisfy: that Plaintiff was qualified for the position and that Plaintiff suffered such action under circumstances which give rise to an inference of unlawful discrimination.

### a.  Whether Plaintiff Was Qualified for the Position

At the prima facie stage of proceedings, the court focuses on Plaintiff's objective qualifications to determine whether he is qualified for the relevant job. *Wexler v. White's Fine Furniture, Inc.*, 317 F3d 564 (6th Cir. 2003). The prima facie burden requires Plaintiff to provide credible evidence that his qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. *McElroy v. Phillips Med. Sys., Inc.*, 127 Fed Appx. 161 (6th Cir. 2005). Here, Defendant argues that Plaintiff does not meet the "minimum objective criteria required for employment in the relevant field." Plaintiff held the position "Lead Water Distribution Worker." As a result of Plaintiff's convictions for Operating While Impaired and Careless Driving, Plaintiff's CDL endorsement was suspended for one year. (Exhibit A, pp. 84-85).

The position "Lead Water Distribution Worker" requires the employee to supervise a crew of laborers engaged in the installation, maintenance and repair of water distribution facilities and equipment. This is a hands-on, labor intensive position which requires the Supervisor to operate commercial vehicles and maintain a valid Michigan driver's license and CDL certification as a "minimum qualification for the job." ECF No. 23 Ex. D. Defendant contends that Plaintiff thus was not qualified for the position "Lead Water Distribution Worker" and cannot prove a prima facie

cause of action for discrimination based upon his suspension from that position.

Plaintiff, however, does not argue that he was qualified for the Lead Water Distribution Worker position. On the contrary, he suggests that there is no evidence that he was not qualified to receive an accommodation from the city after his CDL had been suspended. The adverse employment action that Plaintiff alleges he suffered, however, was his suspension from his position as Lead Water Distribution Worker and subsequent demotion. ECF No. 1. pars. 12-16. Plaintiff does not offer any legal authority to support his contention that he was entitled to an accommodation from the city after he was disqualified for his position. Because Plaintiff did not maintain an active CDL certification, he was not qualified for the Lead Water Distribution Worker position and has not demonstrated a prima facie case of age discrimination as a result of his suspension from his Lead Water Distribution Worker position.[1]

Plaintiff also argues that he was qualified for a number of positions which he was not interviewed for or not offered, but instead were offered to other employees or that other employees were treated more favorably. Plaintiff's complaint does not allege that he applied for positions that he was otherwise qualified for but was not offered the positions because of his age. This argument, however, will be discussed in the next section addressing whether the adverse employment action Plaintiff suffered was under circumstances giving rise to an inference of unlawful discrimination.

---

[1] Plaintiff also alleges that he was qualified for his Refuse Collection Worker position but was suspended on two occasions for hitting parked cars because of his age. Plaintiff's arguments suggests that he was suspended on these occasions in retaliation for filing an EEOC charge and not because of his age and these allegations will be addressed in the context of Plaintiff's retaliation claim.

### b.     Whether Plaintiff Suffered the Adverse Employment Action Under Circumstances Giving Rise to an Inference of Unlawful Discrimination

As evidence of circumstances that give rise to an inference of unlawful discrimination, Plaintiff notes that another, younger employee in the Electrical Department lost his CDL privileves but was not suspended. Instead, he was accommodated with a position at a similar level of compensation and his original position help open until his CDL was reinstated. Defendant notes that the younger employee's accommodation was possible because a position in his union had been vacated that did not require a CDL. Plaintiff also held one of two supervisor positions, while the Electrical Department employee was one of twenty- four non-supervisor Journeymen-Linemen. At the time of Plaintiff's suspension, there were no open supervisor positions within his union that did not require a CDL.  When the city attempted to transfer Plaintiff to a position with another union, it was unable to because the union's CBA prohibited transferring employees between the two unions and the union would not waive its contractual seniority provision.  Plaintiff argues that the city had the ability accommodate both Plaintiff and the Electrical Department worker but decided not to accommodate Plaintiff because of his age.

At the time of Plaintiff's suspension, there were no UWUA 541 supervisory positions available. During the course of Plaintiff's suspension, two UWUA 542 positions were created. Plaintiff had no training or experience for either position and thus did not meet the minimum qualifications for either position. Defendant had neither contractual nor legal authority or obligation to place Plaintiff into another supervisory position.  There is nothing to suggest that the City's actions give rise to an inference of unlawful discrimination on this basis.

Plaintiff also contends that the city posted two supervisor positions that did not require an active CDL, but only that the candidate obtain a CDL within six months, which he was able to

-14-

achieve. Plaintiff does not argue that the individuals hired were less qualified; Plaintiff only argues that he met the requirements for this position but was not offered an interview and two younger individuals were instead hired for the positions. An inference of unlawful discrimination does not arise, as a matter of law, merely because an employer has chosen between two qualified candidates. *Teamsters v. United States*, 431 U.S. 324, 358 n. 44 (1977). "Under such a scenario, an equally—if not more—reasonable inference would be that the employer simply selected the candidate that it believed to be most qualified for the position." *See id.* Plaintiff likewise has not satisfied this element of a prima facie case of age discrimination based on disparate treatment.

### B.   Plaintiff's Retaliation Claim

The ADEA prohibits an employer from "discriminat[ing] against any of his employees . . . because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the Act]." 29 U.S.C. § 623(d). An employer will be strictly liable for a supervisor's proven discrimination where such discrimination results in an adverse employment action. *Keeton v. Flying J, Inc*., 429 F.3d 259, 262 (6th Cir. 2005). An adverse employment action is defined as one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

"A plaintiff in a Title VII or ADEA action may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Med. Prods., Inc*., 515 F.3d 531, 543 (6th Cir. 2008). Direct evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action. *Id.* at 543-44. Instead, direct evidence "requires

the conclusion that unlawful retaliation was a motivating factor in the employer's action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis omitted). Here, Plaintiff's evidence–that he was disciplined and suspended for motor vehicle accidents–is not direct evidence of discrimination because even if believed, it would not require the conclusion that Defendant unlawfully retaliated against Plaintiff.

When a plaintiff presents only circumstantial evidence of retaliation, we examine ADEA retaliation claims under the same *McDonnell Douglas/Burdine* framework used to assess discrimination claims. *Imwalle*, 515 F.3d at 544. Accordingly, because Plaintiff does not proffer any direct evidence regarding retaliation, we examine his retaliation claim using the burden-shifting framework of *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Under this framework, Plaintiff has the initial burden to establish a prima facie case of retaliation under the ADEA by establishing that: (1) he engaged in protected activity when he made his age discrimination complaint; (2) Defendant knew about his exercise of the protected activity; (3) Defendant thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir.2007) (citation omitted). If Plaintiff establishes a prima facie case, the burden of production shifts to Defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." *McDonnell Douglas*, 411 U.S. at 802. If Defendant succeeds in doing so, then the burden shifts back to Plaintiff to demonstrate that Defendant's "proffered reason was not the true reason for the employment decision." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 320 (6th Cir. 2007) (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000))

(internal quotation marks omitted).

Defendant concedes that Plaintiff's filing an EEOC charge constitutes protected activity. Plaintiff contends that Defendant had knowledge of the EEOC charge and that Plaintiff suffered adverse actions when Defendant failed to interview Plaintiff for the Sanitation Supervisor position, when Defendant instructed the Street/Sanitation/Fleet Department to fill the Construction Worker position before Plaintiff returned from his suspension, when Defendant forced Plaintiff into the Refuse Collection Worker position, and when Defendant attempted to "build a file" against Plaintiff through disciplinary action for motor vehicle accidents. Plaintiff's complaint, however, only pleads a claim for retaliation for being written up and suspended for his involvement in motor vehicle accidents. Plaintiff's alternate theories of retaliation in his response brief have never been pled and are not before the Court.

### 1. Protected Activity

Plaintiff's complaint identifies his filing a March 16, 2010, EEOC charge alleging age discrimination as engaging in protected conduct. Defendant does not contest that this constitutes protected conduct. Plaintiff's response to Defendant's motion for summary judgment, however, also contends that the union grievance filed on his behalf constitutes protected activity for which he was retaliated against. As previously noted, Plaintiff has not pled this theory in his complaint. Moreover, a review of the grievance demonstrates that Plaintiff raised the issue of disparate treatment, but with no reference to being treated differently because of his age. Defendant also correctly notes that Plaintiff has not preserved these new allegations of protected conduct and subsequent retaliation because he only filed an EEOC grievance addressing possible retaliation for his March16, 2010 EEOC charge. *Parry v. Mohawk Motors of Michigan*, 236 F.3d 299 (6th Cir.

2001); *Portis v. State of Ohio*, 141 F.3d 632, 634 (6th Cir. 1998).

### 2. Knowledge

Plaintiff claims he was suspended for five and ten days by his superiors, Kurt Hausbeck and Tony Rytlewski, after he filed a Notice of Charge of Discrimination with the EEOC. The Notice of Charge was processed and served on the City of Bay City, Human Resources Department, on April 8, 2010. ECF No. 23 Ex. S. Defendant contends that copies of the Notice of Charge were not circulated nor disclosed to the Sanitation Department where Plaintiff was employed. Plaintiff's Supervisors, Kurt Hausbeck and Tony Rytlewski, each testified they had no knowledge that Plaintiff filed a Notice of Charge of Discrimination with the EEOC until this litigation was initiated.

As previously noted, on May 24, 2010, Lehmann was involved in a property damage accident while driving a sanitation vehicle. On June 4, 2010, his Supervisors issued a "Five Day suspension" arising out of the property damage accident. On July 28, 2010, Lehmann was involved in another property damage accident while driving a sanitation vehicle. On August 10, 2010, Mr. Lehmann's Supervisors issued a "Ten Day" suspension arising out of the July 28, 2010 property damage accident. At the time of suspensions, neither of Plaintiff's Supervisors had any knowledge that he filed an EEOC Claim. As such, Defendant contends that Plaintiff cannot establish a prima facie cause of action for retaliation.

In response, Plaintiff generally contends that Defendant had knowledge of Plaintiff's EEOC charge because the Notice of Charge was submitted to the Human Resources Department on April 8, 2010. Plaintiff does not contend that any of his supervisors who made the decisions regarding his suspension knew about his EEOC Charge. A supervisor's knowledge and motives are relevant to the retaliation analysis if the supervisor "contributed significantly" to and was "meaningfully

involved" in the adverse decision. *Wells v. New Cherokee Corp.*, 58 F.3d 233, 238 (6th Cir. 1995); *see also Arendale v. City of Memphis*, 519 F.3d 587, 604 n. 13 (6th Cir. 2008) ("When an adverse . . . decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a 'rubber-stamp' . . . theory of liability."); *Nemet v. First Nat'l Bank of Ohio*, 198 F.3d 246, at *6 (table) (6th Cir. 1999) (holding that employer may not shield itself from liability by having one manager make adverse decision in reliance on another manager's information without independent investigation). Here, there is no evidence that either supervisor making the decisions regarding Plaintiff's discipline and suspension knew about the protected activity nor is there any evidence that Plaintiff's supervisors "rubber stamped" a decision made by another individual who was aware of Plaintiff's protected activity. Plaintiff thus has not established a prima facie case of retaliation.

### III. Conclusion

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment (ECF No. 23) is **GRANTED**.

It is further **ORDERED** that Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**, and the Court **DECLINES JURISDICTION** over Plaintiff's state law claims.

It is further **ORDERED** that the hearing scheduled for July 2, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 9, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 9, 2012.

                                              s/Tracy A. Jacobs
                                              TRACY A. JACOBS